IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| EMILY WELCOME, CHARLOTTE GRAHOVAC, <br><br> Plaintiffs, <br><br> v. <br><br> AMPLITY INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 4:22-cv-00830-RK |

## ORDER

Currently before the Court are two motions: First, Plaintiffs Emily Welcome and Charlotte Grahovac filed a motion to stay this case pending the Supreme Court's anticipated decision in *Groff v. DeJoy*, No. 22-174 (U.S.). (Doc. 9.) Second, Defendant Amplity Inc. filed a motion to dismiss Counts I, II, and V of Plaintiffs' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 13.) Both motions are unopposed as no party filed a response to the opposing party(ies)'s motion. After careful consideration and for the reasons explained below, the Court **ORDERS** that: (1) Amplity's motion to dismiss (Doc. 13) is **GRANTED in part** and **DENIED in part**; and (2) Plaintiffs' motion to stay (Doc. 9) is **GRANTED**.

I. Background

The following facts are taken from Plaintiffs' complaint and are accepted as true for purposes of considering the two motions above.

Plaintiffs Emily Welcome and Charlotte Grahovac worked at Amplity Inc. as Biosimilar Account Specialists. (Doc. 1 at ¶ 1.) Ms. Welcome began in August of 2018; Ms. Grahovac began in January 2020. Both were assigned to a customer, Organon, which sells immunology and oncology biosimilar products in the healthcare field. (*Id.* at ¶ 2.) At the time they began their employment, Plaintiffs were not required to disclose any immunity status and were not required to take any particular vaccines. (*Id.*)

While Plaintiffs were employed at Amplity, Amplity advertised a position, "Immunology Specialty Representative," for which "Proof of Covid Vaccination [is] Required." (*Id.* at ¶ 1.) In addition, on October 5, 2021, Amplity enacted a policy requiring COVID-19 vaccination for its employees. (*Id.* at ¶ 80.) The policy set November 24, 2021, as a deadline for "Amplity field-

based employees working on behalf of Organon" to comply with the new vaccination policy. (*Id.*) The policy required employees to be "fully vaccinated," which was defined as "two weeks following the final dose of a COVID-19 vaccine that has received final approval by the U.S. Food and Drug Administration (FDA) and the World Health Organization." (*Id.* at ¶ 22.) Amplity did not provide religious or medical accommodations to its COVID-19 vaccination requirement in the policy. (*Id.*) Organon instituted its own policy requiring its employees be fully vaccinated by November 24, 2021, which did include exemptions for medical and religious accommodations. (*Id.* at ¶ 81.)

Ms. Welcome submitted a religious accommodation request to Amplity on November 8, 2021. (*Id.* at ¶ 17.) A few weeks later, Amplity rejected the request, stating "the Exemption Review Board does not believe this criteria [that her refusal to be vaccinated was based on a sincere belief that is religious in nature] was met." (*Id.*) Amplity further explained that "even if your exemption request is approved, Amplity is not able to provide a reasonable accommodation for your current role. The Biosimilar Account Specialty role requires regular in-person engagements . . . in medical offices and facilities[.] . . . Engaging in these interactions unvaccinated and on behalf of the company puts you and the company at great risk." (*Id.* at ¶ 18.) Ms. Grahovac, who also submitted a request based on asserted sincerely held religious beliefs, received an identical response from Amplity around the same time as Ms. Welcome. (*Id.* at ¶ 19.)

After their religious accommodation requests were denied, Plaintiffs were both placed on unpaid leave effective December 1, 2021. (*Id.* at ¶ 25.) Amplity stopped paying Ms. Welcome on November 24, 2021, and converted her employment to unpaid-leave status on November 29, 2021. (*Id.*) Both Plaintiffs were provided "closeout information" in this interim period, and Amplity posted Ms. Grahovac's position as "open." (*Id.* at ¶¶ 27, 30 & 31.) Ms. Grahovac was ultimately terminated on December 10, 2021; Ms. Welcome was terminated on December 13, 2021. (*Id.* at ¶¶ 28 & 30.) Plaintiffs were terminated because they failed to comply with Organon's vaccination policy. (*Id.* at ¶ 21.) Although Organon's policy provided for religious accommodations, Amplity did not provide Plaintiffs with an avenue to pursue a religious accommodation with Organon. (*Id.*)

Ms. Welcome filed a charge of discrimination with the Missouri Commission on Human Rights, which issued a Notice of Right to Sue on November 2, 2022. (*Id.* at ¶¶ 48-49.) Ms. Grahovac similarly filed a charge of discrimination with the EEOC, which issued a Notice of Right to Sue on October 20, 2022. (*Id.* at ¶¶ 51-52.)

Plaintiffs seek relief for employment and disability discrimination under various federal and state law claims, including:

- Count I – failure to accommodate disability in violation of the Americans with Disabilities Act of 1990 and the Rehabilitation Act of 1973;
- Count II – religious discrimination (disparate treatment) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII");
- Count III – religious discrimination (failure to accommodate) in violation of Title VII;
- Count IV – religious discrimination (retaliation) in violation of Title VII;
- Count V – religious discrimination (disparate treatment) in violation of Title VII;
- Count VI – religious discrimination in violation of the Missouri Human Rights Act ("MHRA"); and
- Count VII – disability discrimination in violation of the MHRA.

## II. Defendant Amplity's Motion to Dismiss Counts I, II, and V (Doc. 13)

Amplity asserts that Counts I, II, and V of Plaintiff's complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

### A. Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for failure to state a claim for relief. In order to avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The plausibility pleading standard requires a showing of more than just a mere possibility that the relief sought is in fact obtainable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a 12(b)(6) motion to dismiss, the Court must accept the plaintiff's specific factual allegations as true, but it is not obligated to accept as true the plaintiff's legal conclusions. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

### B. Count I – ADA/Rehabilitation Act Disability Claim

In Count I, Plaintiffs allege Amplity violated the ADA/Rehabilitation Act to the extent its "vaccine policy considers the plaintiffs' medical condition of being 'unvaccinated' as a disability," and then "terminated the plaintiffs because of [their] perceived disability constituting not having artificially induced immunities to the SARS virus." (Doc. 1 at ¶¶ 110-11.) Amplity argues that Count I must be dismissed because Plaintiffs have not administratively exhausted this claim. The Court agrees.

"Prior to filing a federal employment action in the district court a complainant must comply with certain notice and exhaustion requirements." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). Disability-discrimination claims under the ADA and Rehabilitation Act are no exception. *See Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021) (recognizing exhaustion requirement under the ADA); *Frye v. Aspin*, 997 F.2d 426, 428 (8th Cir. 1993) (recognizing exhaustion requirement under the Rehabilitation Act). Claims pursued in court are deemed exhausted to the extent they are "like or reasonably related to the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986). In the Eighth Circuit, the critical inquiry is the *scope* of the administrative investigation following from the charge of discrimination: "The key is that the scope of a judicial complaint can be no broader than the scope of the [administrative] investigation that could reasonably be expected to grow out of the charge in the [administrative] complaint." *Weatherly*, 994 F.3d at 945 (cleaned up). While the Court must liberally construe an administrative charge, it cannot "invent, ex nihilio, a claim that was not made before the relevant agency." *Id.* (citing *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015)).

Both administrative charges here are nearly identical.[1] Both check the boxes for "religion" and "retaliation" as the "cause of discrimination based on," and neither mention a disability in the substance of the administrative charge. Both charges allege only that Amplity refused their religious exemption accommodation requests for the COVID-19 vaccination policy, and cite retaliation and termination (including constructive termination) "based upon my religious beliefs." Neither administrative charge makes any allegation or reference to a discrimination claim based on any disability. Plaintiffs have therefore failed to exhaust administrative remedies for their disability discrimination claim. *See also Brown v. Saul*, No. 4:18-cv-00617-DGK, 2019 WL

---

[1] In considering a motion to dismiss the Court is generally limited to the face of the pleadings; the Court may also consider materials attached to or necessarily embraced by the complaint or matters of public record. *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 931 (8th Cir. 2011) (holding that district court did not err in considering the EEOC charge in ruling on motion to dismiss); *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802 (8th Cir. 2002) (court could properly consider EEOC charge as part of the public record in considering a motion to dismiss); *J.B. v. Maximus Fed. Serv., Inc.*, No. 4:22-cv-00554-RK, 2022 WL 16951667, at *1 n.3 (W.D. Mo. Nov. 15, 2022); *Brown v. Gen. Motors, LLC*, No. 4:20-CV-1760 RLW, 2022 WL 343415, at *1 n.1 (E.D. Mo. Feb. 3, 2022); *Frey v. Fed. Reserve Bank of St. Louis*, No. 4:15-CV-737 (CEJ), 2015 WL 4526963, at *2 (E.D. Mo. July 27, 2015). Accordingly, the Court can properly consider Plaintiffs' charges of discrimination attached as Exhibit A and Exhibit B to Amplity's motion to dismiss (*see* Doc. 14 at 14-18).

4861902, at *2 (W.D. Mo. Oct. 2, 2019) (finding plaintiff failed to exhaust disability discrimination claim and granting defendant's motion to dismiss); *Favaloro v. BJC Healthcare*, No. 4:14-CV-284 CAS, 2015 WL 6531867, at *3 (E.D. Mo. Oct. 28, 2015) (same); *Wright v. Kiewit Indus.*, No. 10-0822-CV-W-DW, 2011 WL 13189847, a *5-6 (W.D. Mo. Nov. 9, 2011). Amplity's motion to dismiss Count I for failure to exhaust administrative remedies is granted.

### C. Counts II and V – Title VII Disparate Treatment and Disparate Impact Religious Discrimination Claims

Amplity also argues that Counts II and V fail to state a claim for religious discrimination under either a disparate treatment or disparate impact theory.

Under Title VII it is unlawful for an employer to discriminate against any individual "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). Title VII defines the term "religious" as encompassing "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

The Supreme Court explained in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) that there are two causes of action under Title VII: (1) a "disparate treatment" or "intentional discrimination" claim, and (2) a "disparate impact" claim. *Id.* at 771 (quotation marks omitted). The former – a disparate treatment claim – is based on § 2000e-2(a)(1), which prohibits an employer from, in relevant part, "discharge[ing] any individual . . . because of such individual's . . . religion." *See also Mann v. Frank*, 7 F.3d 1365, 1370 (8th Cir. 1993) ("A disparate treatment case based on religion requires a plaintiff to show that she is, or was, treated less favorably than others because of her religious beliefs.") (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). The latter – a "disparate impact" claim – is based on § 2000e-2(a)(2), which prohibits an employer from "limit[ing], segregat[ing] or classify[ing] [its] employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion."

Amplity argues that Plaintiffs fail to plead a plausible Title VII claim for religious discrimination under either a disparate treatment or disparate impact theory because Plaintiffs "fail to allege that they are in a class protected by Title VII." Specifically, Amplity argues that Plaintiffs allege that Amplity's COVID-19 vaccination policy "created two classes of employees; injected and uninjected," classes which are not protected under Title VII. (Doc. 14 at 11; *see* Doc. 1 at

5

¶ 67.) In both Counts II and V, however, Plaintiffs allege that their sincere religious beliefs precluded them from complying with Amplity's COVID-19 vaccination policy, for which they requested accommodation but were denied. (Doc. 1 at ¶¶ 126 & 202.) In addition, Plaintiffs allege that Amplity's COVID-19 vaccination requirement "had an adverse effect on each plaintiff who was unable to consent to a COVID-19 vaccination injection for religious reasons," and that they were terminated because they did not comply with that policy. (*Id.* at ¶¶ 130 & 204.) The Court finds that Plaintiffs have plausibly alleged at this early stage in litigation a Title VII religious discrimination claim in both Count II (disparate treatment) and Count V (disparate impact) sufficient to withstand Amplity's Rule 12(b)(6) motion to dismiss. Amplity's motion to dismiss Counts II and V is denied.

### D. Conclusion

For the reasons explained above, Amplity's unopposed motion to dismiss Counts I, II, and V of Plaintiff's complaint (Doc. 13) is **GRANTED** as to Count I – which is dismissed for failure to exhaust administrative remedies – and is **DENIED** as to Counts II and V.

### III. Plaintiffs' Motion to Stay (Doc. 9)

Plaintiffs argue that this litigation should be stayed pending the Supreme Court's decision in *Groff v. DeJoy*, No. 22-174 (U.S.), expected by the end of the current Supreme Court Term.

District courts have "broad discretion" to stay proceedings as a case or docket management tool. *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)); *see A.M. ex rel. Deora v. Bridgecrest Acceptance Corp.*, No. 4:20-cv-00553-SEP, 2020 WL 3489280, at *3 (E.D. Mo. June 26, 2020) (recognizing the Court's "inherent power to stay proceedings"). When a stay is requested under these circumstances, the Court considers factors including: "whether the non-moving party faces any potential prejudice, the hardship and inequity to the moving party if the action is not stayed, and whether a stay might preserve judicial resources." *Thompson v. Rally House of Kansas City, Inc.*, No. 15-00886-CV-W-GAF, 2016 WL 9023433, at *4 (W.D. Mo. Jan. 25, 2016) (citing *Emerson v. Lincoln Elec. Holdings, Inc.*, No. 09-6004-CV-SJ-GAF, 2009 WL 690181, at *1 (W.D. Mo. Mar. 12, 2009)).

The questions presented in *Groff* are: (1) "Whether [the Supreme Court] should disapprove the more-than-de-minimis-cost test for refusing Title VII religious accommodations stated in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977)"; and (2) "Whether an employer may demonstrate 'undue hardship on the conduct of the employer's business' under Title VII merely

6

by showing that the requested accommodation burdens the employee's co-workers rather than the business itself." Questions Presented, *Groff v. DeJoy*, No. 22-174 (U.S.), *available at* https://www.supremecourt.gov/qp/22-00174qp.pdf (last visited Feb. 28, 2023).

Under these circumstances – and without any opposition from Amplity – the Court finds a stay is appropriate here. This case remains in the early stages of litigation and little to no discovery appears to have occurred to date. Moreover, it appears that the Supreme Court is poised to resolve in *Groff* an important question that could well have meaningful implications for the various Title VII religious-discrimination/accommodation claims which Plaintiffs assert in this case. A stay of approximately three-and-a-half months until the end of the current Supreme Court Term[2] will result in little prejudice to the parties and otherwise best preserves and utilizes judicial resources and promotes judicial efficiency. Upon weighing the above stay factors, the Court finds a short stay pending the Supreme Court's anticipated decision in *Groff v. DeJoy*, No. 22-174 within the current Supreme Court term is warranted here. Accordingly, Plaintiffs' unopposed motion to stay (Doc. 9) is **GRANTED**. The parties are ordered to file a status report within 10 days from the date of the Supreme Court's decision in *Groff v. DeJoy*, No. 22-174, unless otherwise directed by the Court.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 16, 2023

---

[2] Oral argument is currently scheduled in *Groff v. DeJoy* to be held April 18, 2023. *See also Groff*, No. 22-174, *available at* https://www.supremecourt.gov/docket/docketfiles/html/public/22-174.html (last visited Mar. 14, 2023).