IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**Emily Welcome et al**
                            Plaintiff

v.                                         Case No. 4:22-cv-00830

**Amplity Inc.**
                            Defendant

## PLAINTIFFS REPLY TO MOTION TO EXCLUDE EXPERT REPORT OF DANIEL SALMON

Amplity avoids any analysis of how any opinion of Dr. Salmon would assist the trier of fact. But what Amplity is intent on doing is interjecting irrelevant issues into this case. Amplity's theory of undue hardship is set out in Amplity's summary judgment motion statement of fact (ECF 83-182): "Based on the CDC guidance in 2021, Amplity **believed** that unvaccinated employees created a greater risk to themselves or others than unvaccinated employees." (*emphasis added*).[1] But a belief does not create a burden. A belief does not create a safety hazard. This is what Dr. Salmon purports to support.

Look, the Amplity Review Board could have believed in 2021 that requiring employees to take tablespoons of Ivermectin daily thinking it would prevent transmission of the covid 19 virus. So employees that declined to consume it then created a safety risk for the other employees? The answer is no. The question is this – did Ivermectin really have the effect the employer thought? That would be a scientific opinion – if any of it mattered. An employer could have believed – or not

---

[1] Even though, as demonstrated in its lack of knowledge admission responses, it says it doesn't know if this belief is factually correct. *See* Ex. 26 ECF 78-17 (responses to admissions).

1

believed – any number of things about the covid-19 virus, how it was transmitted, or what constituted preventative measures. Undue hardship deals with reality and truth about whether a risk – or the scope of the risk – actually existed. So does relying upon an untruth – or bad science – or any number of things that were not true – justify an undue hardship defense? The answer to that is no. Otherwise the undue hardship analysis is converted into a good faith belief – "we really believed that vaccinating prevented the transmission of the virus" when in reality it did not.

This is why defense counsel framed all of the objectionable questions to Dr. Salmon "as known or assumed *at the time*."[2] But truth is not compartmentalized as theorized by Amplity's defense counsel. The factfinder is concerned about the truth – what was the real truth – not *beliefs* or what was thought to be true. Beliefs in what an employer thought about who could transmit the virus or the effectiveness of masks or testing is not relevant and is not a jury question. This is why Dr. Salmon's opinions about what Amplity purportedly believed in 2021 – or could believe in 2021 – will not be helpful to the trier of fact as to any issue in this case.

Contrary to Amplity's theory, a belief does not create a burden. This is not a case about the Amplity Review Board's so-called "risk assessment" or its mindset behind this purported virus transmission risk. The question of a safety risk to co-

---

[2] ECF 54-1 (Report) Dr. Salmon does not purport to state scientific fact – only what he thinks was known or assumed by the world in 2021:
- In October to December 2021… ***what was known or assumed***.
- ***What were the known or assumed*** benefits…in October to December 2021.
- In October to December 2021, ***was it known or assumed***.
- ***What was known*** about the effectiveness of the vaccines ***at the time***.
- ***At that time***, was there any support…

2

workers is not built upon belief but upon reality. Then, if real, evaluating the cost to the employer's overall business in accommodating the employee. Amplity literally bypasses every analysis. Amplity concludes this risk of virus transmission by Emily and Charlotte was greater than any vaccinated employee. Why – because it believed it to be so but didn't know it its belief was actually correct. Amplity then seeks to convert Salmon's frozen-in-time opinions as though the Amplity Review Board relied upon Dr. Salmon's knowledge about the 2021 world knowledge for its vaccine policy. This is a red herring. The factfinder is to look at the accommodation process (which did not exist), evaluating possible accommodations to the plaintiffs' respective religious convictions, and then if any undue hardship existed to each possible accommodation considering cost to the overall business of Amplity. Salmon's report is literally of no assistance to any of those issues.

### Amplity's Citations to Pre-Groff Are Not Persuasive

Amplity cites to the overruled *de minimis* analysis. It first cites the Missouri Department of Labor's website for the proposition that the "employer can show undue hardship if accommodating an employee's religious practices impairs workplace safety." The Missouri website actually states the overruled *pre-Groff de minimis* standard referring to co-workers and the other pre-Groff *de minimis* factors.[3]

Amplity ignores the Fifth Circuit decision in *Hebrew v. Texas Dep't of Criminal Justice,* 80 F.4th 717 (5th Cir. 2023), which explicitly interprets *Groff* as requiring an

---

[3] The website interpretation is outdated after *Groff* and not persuasive as Missouri law governs. Courts "are guided by both Missouri law and any federal employment discrimination (i.e., Title VII [of the Civil Rights Act of 1964]) case law that is consistent with Missouri law." *Lampley v. Mo. Comm'n on Hum. Rts.,* 570 S.W.3d 16, 22 (Mo. banc 2019).

3

economic analysis and as specifically applied to a purported a beard "safety" issue. *Smith v. City of Mesa,* No. CV-21-01012-PHX-DJH, 2023 WL 2463819 (D. Ariz. Mar.10, 2023) was ignored. The *Smith* court was unpersuaded by the safety health possibilities of something that might happen but not certain, particularly without any financial analysis to support the claim. *Id.* at *5. Amplity ignores *Isensee v. Amplity, Inc.,* 2024 WL 2132419 (S.D. Ohio West May 13, 2024), which similarly held Amplity presented no economic analysis in its covid 19 transmission "burden."

Amplity instead relies upon a Third Circuit Pennsylvania district case in *Bushra v. Main Line Health, Inc.,* No. 23-1090, 2023 WL 9005584 (E.D. Pa. Dec. 28, 2023) which, upon even a cursory examination, does not follow the *Groff* analysis.[4] And although Amplity claims that Salmon provided "the same report" in *Bushra* Salmon did not. *See attached* Salmon Reports in *Bushra* and *Gray*.

*Bushra*, nor the cases cited by Amplity, apply the *Groff* analysis in the correct manner which requires an economic analysis to any purported health safety risk.[5] In a recent case within the 8th Circuit, *Floyd v. Trinity Central Home Health, LLC,* No. 6:22-cv-061172024 WL 3653055 (W.D. Ark. Aug. 5, 2024), the defendant Trinity Central Home Health required the plaintiff Floyd, a nurse, to be Covid-19 vaccinated and claimed in its summary judgment motion that "because of the substantial risk

---

[4] The Third Circuit's pre-*Groff* analysis was that an economic analysis to the overall business of the company was not required to prove undue hardship. *See E.E.O.C. v. GEO Group, Inc.,* 616 F.3d 265, 273 (3d Cir. 2010). *Bushra* cites it as current law which, under *Groff*, cannot follow. The Eighth Circuit has never adopted the Third Circuit's non-economic rationale for undue hardship.

[5] Indeed, Amplity relies entirely on *Bushra* because Becky O'Loughlin specifically admitted the Review Board conducted no economic analysis at all – for that matter no case by case analysis of any possible transfers or reassignment of territories.

4

[Plaintiff] presented to his patients, families, coworkers, and their families, his requested accommodation presented an undue burden on [Defendant]'s business—safe home health treatment—that could not be eliminated." *Id.* at *7. Nurse Floyd responded stating that "'there would have been no undue hardship with substantial cost to let Plaintiff be tested and quarantined if exposed' to Covid-19 and that 'there simply is no record evidence of a substantial cost to Defendant for allowing Plaintiff ... to mask, test, and quarantine for a period of time.'" *Id.*

Judge Hickey denied defendant's motion for summary judgment stating:

> The Court finds that the record is devoid of evidence showing that granting an accommodation would result in substantial increased costs in relation to Defendant's business. While the Court is aware of the nature of Defendant's business, the Court is unaware of the "size and operating cost" of the business and the potential impact an accommodation such as the masking, testing, and quarantining of one employee, would have on those factors. *Groff*, 600 U.S. at 471, 143 S. Ct. 2279. Further, Plaintiff asserts that Defendant made no attempt and "failed to engage in any process to attempt to accommodate Plaintiff," and "terminated Plaintiff simply because he did not want to get the Covid-19 vaccine due to his religious beliefs." ECF No. 21, p. 14. In fact, Plaintiff asserts that Defendant did not engage in any sort of communication with him at all to discuss his request. Id. However, Defendant states in its notice to Plaintiff informing him of the denial of his request that the permanent exemption request was "discussed with [Plaintiff on] 10/19/2021." ECF No. 19-8. As such there are questions of fact that remain in this case regarding the issue of undue hardship. Accordingly, the Court finds that summary judgment is inappropriate, and Defendant's motion should be denied.

*Id.* at *7.

And it is true the Dr. Salmon has hit gold being a bit of a trick pony in the state of Pennsylvania. But the plaintiff in *Bushra* never challenged Salmon's report or Salmon's assertions.[6] And most striking is the fact Amplity does not address the

---

[6] And the Eastern District of Pennsylvania is not uniform in its analysis even as to the same defendant. *See Gray v. Main Line Hosps., Inc.,* 2024 U.S. Dist. LEXIS 26885 (E.D. Pa. Feb. 15, 2024) (Scott, J.). *Gray* found a rational jury could find for that plaintiff on the issue of undue hardship despite the same Salmon report. The plaintiff in *Gray* was a nurse who

5

plaintiffs' objections to his legal conclusions and speculative could-be-known-or-assumed opinions. Amplity whistles by the graveyard and does not address how any of Dr. Salmon's frozen-in-time opinions goes to any factual question for the factfinder. Amplity's opposition does not address the underlying elephant in the room: Amplity's theory of undue hardship based upon a *belief* and not fact. Amplity props up Salmon as being better than an Artificial Intelligence server. Salmon goes so far off the charts as to be the self-proclaimed repository of 2021 world beliefs about Covid-19 to reach even the hypothetical things that *could have been believed or even assumed*. There is no scientific methodology he provides to demonstrate this vast oracle repository of what was known and not known. And then bootstrapped upon this belief Amplity seeks to manufacture a burden it calls "risk." Not one opinion from Dr. Salmon purports to say that any of what he opines is actually scientifically accurate or true as we sit in 2024. And then he purports to say what the Review Board knew – or could have possibly known – when in fact Amplity admitted it had no knowledge in its admissions. Amplity seeks to use Dr. Salmon's opinions about knowledge vicariously imputed to it – when the plaintiffs specifically asked Amplity to admit the actual scientific truth – to which Amplity responded with unknown. *See* Ex. 26 ECF

---

requested a religious exemption to the same Main Line COVID-19 Vaccination Policy. Gray, at *2. Like *Bushra*, the employer argued that each vaccine exemption posed a significant risk to the health and safety of employees and patients. *Id.* at *15. But the plaintiff countered that the employer presented no evidence as to different accommodations or even the same accommodations given to other employees including testing, reassignment, or additional infection prevention control measures would have created an substantial cost to its overall business operations. *Id.* at **16-17. *Gray* concluded that undue hardship was a jury question. *Id.* at *17.

6

Case 4:22-cv-00830-RK   Document 93   Filed 08/27/24   Page 6 of 10

78-17 (responses to admissions); Ex. 5 to Plaintiffs' Opposition to Amplity Summary Judgment (Admissions):

> 18* There was no objective, scientific basis for Amplity to believe that being fully vaccinated protected against Covid-19 transmission when Ms. Welcome's employment was terminated.
> 12* Covid 19 vaccines do not prevent transmission, infection, or reinfection in those who consent to receive them.
> 19* There was no objective, scientific basis for Amplity to believe that Ms. Welcome would have posed a greater risk to transmitting Covid 19 than any other fully vaccinated Amplity employee.
> 8* The CDC Director admitted that being fully vaccinated did not prevent infection or transmission of SARS-CoV-2.
> 11* Amplity employees who were fully vaccinated could transmit SARS-CoV-2 to fellow workers and customers.
> 9* The CDC has acknowledged that the fully vaccinated and those who are not fully vaccinated are equally likely to spread the Covid 19 virus.
> 18* Amplity employees who were fully vaccinated could become re-infected with SARS-CoV-2.
> 1* The Covid-19 vaccines Moderna, Pfizer, and Johnson & Johnson never prevented the transmission of a Covid-19 virus.
> 7* Amplity employees who were fully vaccinated could become infected with SARSCoV-2.
> 33* At the time Amplity created its Covid 19 policy, CDC guidance and other studies acknowledged that being fully vaccinated did not hinder the transmission of the SARS virus at all.

Amplity should be precluded from introducing knowledge evidence including through Dr. Salmon based on these responses. Given that Amplity admits it did not know then – or now – any of those facts how is Dr. Salmon's opinions seeking to input knowledge to the Amplity Review Board of which Amplity admits to having no knowledge of the same?[7] So now Dr. Salmon's knowledge magically becomes Amplity's knowledge – even though Amplity says it didn't – and doesn't – know. Amplity goes on to use more sleight of hand in converting Dr. Salmon's opinions about

---

[7] In light of Amplity's admitted ignorance to these critical scientific facts, what purpose does Dr. Salmon's opinions accomplish regarding what the world knew in 2021? Designating a rebuttal expert to counter Salmon's claim to 2021 knowledge – while Amplity admitted no knowledge – then while not presenting any scientific opinion as to what is or not scientifically correct in 2024 would be chasing a meaningless rabbit down an irrelevant rabbit hole.

what he says was believed or assumed by the world in 2021 into actual 2024 concrete scientific fact. For example, in statement 42 (ECF 83) it states "unvaccinated persons have a potential impact on co-workers as unvaccinated persons are at greater risk of contracting and spreading COVID-19 than vaccinated persons" as though this is a 2024 scientific fact.[8] In statement of fact 43 it states "As with coworkers, unvaccinated persons have a potential impact on patients as unvaccinated persons are at greater risk of contracting and spreading COVID-19 than vaccinated persons." But Dr. Salmon never gave either of those opinions – all that he stated was that, based upon his Oracle encapsulation of world / Amplity knowledge circa 2021 – was a belief – what was *believed* in 2021 – not whether it was actually scientifically presently true or not.

As another example, defense counsel asks Salmon in question #9: "Was masking, social distancing (to the extent possible) and periodic testing sufficient." But sufficient to do what? And despite Salmon's vague "no" opinion about testing, the Review Board gave each its Board members – along with 1/5 of the total labor force (200) – the accommodating option of not being fully vaccinated but instead just to be tested 72 hours prior to a personal contact.

Amplity's belief isn't a legal or factual question for the factfinder concerning what constitutes an undue hardship.[9] Amplity's purported "safety risk" does not

---

[8] And even though the assertion of this proposition is directly controverted by Amplity's admission that it doesn't know this very thing.

[9] The 5th Circuit in *Hebrew* didn't engage in any *mens rea* analysis – asking whether TDCJ had good reason to *believe* there was a safety risk with the guard's beard – rather it analyzed whether <u>there was an actual safety risk,</u> and if so the range of accommodations which could be performed – and then whether every accommodation would impose an substantial

8

become reality based upon the Review Board's beliefs. A safety risk is not created from subjective belief – it is created from scientific fact. None of Dr. Salmon's opinions proffer any actual scientific analysis as to whether the Review Board was scientifically correct as to whether Emily or Charlotte presented any greater risk of transmitting the virus than any other vaccinated employee. So Dr. Salmon does not opine, for example, that the unvaccinated actually posed a greater safety risk than the vaccinated in 2021 – only that this is what he says was *believed* in 2021. If beliefs create safety hazards which then justify undue hardship, the analysis is converted into a *mens rea* analysis creating fact from fiction – which it isn't.

All of this is a red herring. As Judge Anderson held in *Hayslett v. Tyson Foods, Inc.,* No. 1:22-cv-01123 (E.D. Tenn. Sept. 20, 2023), the factfinder will not decide whether the Review Board had a good faith belief in its vaccine mandate. A burden is not created from belief. Risk is not created by a belief. And Amplity specifically admits it does not know the truth as to its risk assessment as demonstrated in its admission responses. Instead, it relies entirely on ignorance and then some sort of good faith belief theory to create a risk when it cannot say whether its belief about the risk was actually scientifically correct. Dr. Salmon's report, with its artificial frozen-in-time oracle snapshot of purported 2021 world knowledge – including Amplity's – is Amplity's recognition that Emily and Charlotte did not, in reality, impose any greater so-called safety risk than any other vaccinated employee. And merely stating "risk" and concluding automatic undue hardship does not comply with

---

economic cost to the entire TDJC system.

the *Groff* which requires Amplity disprove that any and all possible accommodations to each respectively would substantially increase Amplity's costs in conjunction with its overall business.

## Conclusion

For all the reasons stated in the plaintiffs' motion and above, the opinions of Dr. Salmon in his report should be excluded.

By:/s/Linus L. Baker

>Linus L. Baker MO 44980
>6732 West 185th Terrace
>Stilwell, Missouri 66085-8922
>913.486.3913
>913.232.8734 (fax)
>E-Mail: linusbaker@prodigy.net
>Attorney for the plaintiffs

CERTIFICATE OF SERVICE

On this day of August 27, 2024, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.

/s/Linus L. Baker
Linus L. Baker