**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

**Emily Welcome et al**

Plaintiff

v.                                                          Case No. 4:22-cv-00830-RK

**Amplity Inc.**

Defendant

## PLAINTIFFS OPPOSITION TO AMPLITY'S MOTION FOR RECONSIDERATION

### The Issue is Undue Hardship Which is a Fact Question for the Jury

Amplity re-argues that a "safety risk" "created an undue hardship for Amplity." Amplity urges again that patient safety at the facilities that were in the plaintiffs' sales territory created such an undue hardship but Amplity realizes, in its motion for reconsideration, the flaw in this logic as well as their evidentiary problems in so proving.

Defendant Amplity's safety issue is flawed for two basic reasons. First, the safety of facility staff and its patients were determined by each facility's credentialing requirements. Thus, the facility itself assessed the safety concerns for staff and its patients in determining whether Charlotte or Emily could physically enter on to the facility grounds. If the facility's credentialing requirements would not permit plaintiffs physical entry on the grounds, there was no safety issue at all for staff or patients. Thus, Amplity conflates the issue of facility patient "safety" with an automatic determination of undue hardship which is erroneous. The question is

1

whether allowing Emily and Charlotte to remain in their sales positions imposed an undue hardship upon Amplity.

That point cannot be over emphasized: there was zero possibility that facility staff or patients would have any physical contact with Charlotte and Emily in those facilities because of the credentialing requirements. Thus the impossibility of in-person meetings with facility staff meant a zero safety issue for anyone.[1]

What is left? If, on the other hand, the facility weighed the safety issues and still permitted in person contacts with facility staff, that safety consideration is for the facility itself to determine. The facility could have determined that because sales people such as Emily and Charlotte have zero contact with patients, or could be subjected to a 72 hour test, that the facility did not consider the risk meaningful or substantial in allowing personal contacts with staff. It is Amplity's burden to prove otherwise or explain why this still constituted an undue hardship upon Amplity's overall business.

Thus, standing nakedly alone, Amplity urges that it still suffered an undue hardship because of some patient safety concern when Emily and Charlotte could have no personal contact with any facility staff or patient at those facilities. Amplity urges an end-around to that begging question. That answer must then be based on

---

[1] As to the facility requirements, the Review Board was unaware of and never considered what any facility credentialing requirements were for Emily or Charlotte. Board member O'Loughlin testified that the Board had no knowledge as to each client, each facility credentialing, or the contracts. Ex. A ECF 78-19 O'Loughlin, p.120:12-16. O'Loughlin also testified the Board did not "review clients" and had "no idea" which facilities had fully vaccinated requirement Ex. A ECF 78-19 p.153:10-15.

some sort of economic burden projection. But Amplity realizes this fatal flaw in its motion for reconsideration.

In *Speer v. UCOR LLC,* No. 3:22-cv-426, 2024 WL 4370773 (E.D. Tenn. Oct. 1, 2024), which the Court's ruling fairly tracked, the *Speer* court recognized employers may consider "costs like the loss of office efficiency and the safety risk an accommodation can pose to other employees." *Speer*, 2024 WL 4370773, at *10.[2]

So the undue hardship issue to Amplity boils down to how to connect these facility's credentialing safety requirements (in person or no in person) contact to any undue hardship upon Amplity. Amplity realizes it cannot tether the credentialing safety requirements of the facilities to any projection of its own economic loss. *Speer* stated the employer "is entitled to rely on its projections." *Speer*, 2024 WL 4370773, at *10. <u>But Amplity made zero projections</u> and conducted no cost analysis at all. This Court correctly referred *Speer's* analysis of the size of Amplity (p.22).

So under either facility credentialing scenario, what is the undue hardship to Amplity based on facility patient safety when each facility determines its own risk analysis of that issue to its staff and patients? The answer to that must be that

---

[2] Amplity does not urge, and understandably so, as to any co-employee safety issue as Emily and Charlotte had <u>zero</u> personal contact with other Amplity co-employees. As the Court noted in *Speer*, the "evidence as to how often Plaintiffs interacted with coworkers, how many coworkers they interacted with, and how long these interactions occurred." There will be no proof of any co-employee interactions by the plaintiffs. Any interactions could have been handled virtually or through the 72 hour testing. *Groff* acknowledged that the accommodation's impact on the conduct of coworkers is a chief consideration in the undue burden analysis. *Id.* at 471-73.

Amplity must tether this as to how it still effects its overall business. To the first category of facilities denying personal contact, Emily and Charlotte posed a zero safety issue to any staff or patients at facilities as no in person contact was permitted. So no patient safety risk is presented. As to the second category of facilities that did permit in person contact with staff, the facility itself determined the safety risk and permitted personal contact under the credentialing requirements of that particular facility.

This case is like a recent medical sales rep case: *Scafidi v. B. Braun Med., Inc.,* 2024 WL 184258 (M.D. Fla. Jan. 17, 2024). In *Scafidi* a medical product sales rep sued for failing to accommodate on the Covid vaxx. *Scafidi,* 2024 WL 184258 at *1. That court similarly denied summary judgment as to the alleged undue hardship. In its holding, the court noted the lack of analysis as to costs, the sales rep's territory, or facilities:

> There is testimony that Braun did not do any analysis to determine the costs of reconfiguring Scafidi's territory if any hospitals denied her admission…And, indeed, Braun has not presented any estimate of the costs it would have incurred if it had allowed Scafidi to retain her position without getting vaccinated. Furthermore, it does not appear that any of the hospital systems in Scafidi's territory had denied her access or denied her requests for a religious exemption submitted through the hospitals' vendor credentialing systems at the time of her termination.

*Id*. at *11.

Amplity sees its evidentiary problems and wants to do an entire end-around to the *Gross* analysis requiring the undue burden test to take into account "all relevant factors" which requires "their practical impact in light of the nature, size and operating cost of [an] employer." *Id*. at 470-71. *Speer* and this Court cited *Hayslett v.*

4

*Tyson Foods, Inc.,* No. 1:22-CV-1123-STA-JAY, 2023 WL 11897503 (W.D. Tenn. Sept. 20, 2023) (denying summary judgment because the defendant had not established it "could [not] offer an accommodation to Plaintiff without substantially increasing [] costs at the Newbern plant"). As this Court acknowledged, there are vast evidentiary deficiencies as to how granting either plaintiff one accommodation would impact Amplity's overall operations "and presumably increasing [Defendant's] costs." *Hayslett*, 2023 WL 11897503, at *13. As with *Hayslett*, "how much it actually increased costs Defendant has not said." *Id.* A jury will be asked to contextualize whether these costs would be substantial to Amplity. *See Speer,* 2024 WL 4370773, at *11-*12 (finding defendant did not prove undue hardship at summary judgment stage where defendant provided no context for the court to gauge whether its purported costs would be substantial).

Defendant simply makes re-argument which is not sufficient for the Court to change rulings. Amplity makes the same merits arguments that were previously considered by the Court. *See Broadway v. Norris,* 193 F.3d 987, 989-90 (8th Cir. 1999) ("In their motion for reconsideration, defendants did nothing more than reargue, somewhat more fully, the merits of their claim"). There are legitimate questions of fact for a jury determination. Defendant's motion should be denied. *Branca v. Tesla, Inc.,* No. 4:24-CV-00178-RK, 2024 WL 2303947, at *1-2 (W.D. Mo. May 21, 2024).

5

By:/s/Linus L. Baker
Linus L. Baker MO 44980
6732 West 185th Terrace
Stilwell, Missouri 66085-8922
913.486.3913
913.232.8734 (fax)
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiffs

## CERTIFICATE OF SERVICE

On this day of January 13, 2025, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.

/s/Linus L. Baker
Linus L. Baker

6

7