IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Emily Welcome et al

                Plaintiff

v.

Amplity Inc.

                Defendant

Case No. 4:22-cv-00830-RK

## PLAINTIFFS EMILY WELCOME'S AND CHARLOTTE GRAHOVAC'S MOTIONS IN LIMINE

The Court is familiar with the purpose of motions in limine which "are designed to avoid the delay and occasional prejudice caused by objections…." *Smith v. Hy-Vee, Inc.,* 622 F.3d 904, 910 (8th Cir.2010). Rulings allow "parties to modify their trial strategy depending on the outcome of the motion." *Id.*

### Overview

From the beginning of the Amplity Covid 19 Review Board's inception, the Board relied upon a fundamental misperception: that a Covid virus safety risk was a sufficient *sine qua non* constituting undue hardship: that it automatically demonstrated undue hardship requiring nothing else. Erroneously believing that a safety risk robotically equaled undue hardship, the Amplity board did not see the need to conduct any further analysis; such as connecting this perceived safety risk to Amplity's business. Thus, the Board made no investigation assessment of plaintiff's contacts with anyone – co-workers or individuals at facilities. "Even if [Amplity] could demonstrate some increased risk to its own employees caused by accommodating [Emily or Charlotte], that alone, without further analysis of whether such risks would affect the conduct of the business, would not be enough to unduly burden [Amplity]."

1

*Bobnar v. Astrazeneca Pharm.,No.* 1:22-cv-2258, 2024 WL 4893911, at *24 n.41 (N.D. Ohio Nov. 26, 2024) (citing *Hayslett v. Tyson Foods, Inc*. and *Groff* at 472). The *Bobnar* facts are similar to these and which Bobnar cited to *Isensee v. Amplity, Inc.,* 2024 WL 2132419, at *8 (S.D. Ohio May 13, 2024). Just as Amplity did not analyze, and says it does not know, AstraZeneca "represented that it is not in possession, custody, or control of information regarding the specific vaccination requirements of Bobnar's customers." *Bobnar* at *24. "There is likewise no evidence that AstraZeneca would suffer other substantial costs, lost sales, or decreased business due to Bobnar's vaccination status." *Id.* AstraZeneca parrots Amplity claiming Bobnar "interacting with pulmonologists…. doctors while unvaccinated would have created an undue hardship" a stand-alone claim which *Bobnar* found unpersuasive. It distinguished the case law and the facts. Where "health risks posed by a plaintiff's lack of vaccination have constituted undue hardship, the employer's concern tended to regard the risk posed to the *employer's other employees or their own patients*, not the employees or patients of third parties." *Id.* at *25 (*emphasis in original*). AstraZeneca "as a self-described 'global pharmaceutical company,' there is no evidence that, for example, AstraZeneca is a healthcare provider or that its mission or objective would otherwise be harmed if one of its representatives was unvaccinated." *Id.* *Bobnar* granted summary judgment in favor of the plaintiff on his religious accommodation claim stating "AstraZeneca cannot rely on speculative or hypothetical argument to demonstrate an undue hardship."

Identical to AstraZeneca, Amplity also did not analyze facility requirements, projections of financial costs, or even any impact upon its overall business, – anything that would connect the purported safety risk of Emily or Charlotte being unvaccinated to the "nature, size and operating cost" of Amplity.

Knowing Amplity cannot rewrite history, this is why Amplity urged the Court to rule that its claimed safety risk, untethered to any business analysis, automatically created an undue hardship. *See* Court's Order (ECF 115) (rejecting Amplity's claim that it "would create a safety risk *and an undue hardship for Amplity*"). p.2. The Court correctly ruled that a "safety risk and undue hardship are not coterminous." *Id.* This Motion in Limine will focus on the facts Amplity admitted it did not know, evidence that Amplity does not have, did not produce, and therefore should not be allowed to contradict its admission responses or adduce evidence not disclosed or produced prior to trial. This is why Amplity did not identify any third party witnesses in its Rule 26 disclosures, did not provide any discovery responses as to its operating budget or overall costs, and in fact admitted in its numerous responses to Request for Admissions that the Board had no idea whether vaccinating actually prevented or hindered the transmission of the virus.

**AMPLITY'S PROCESS ITSELF WAS AN ADVERSE EMPLOYMENT ACTION**

It is undisputed that Amplity did not engage in any analysis based upon all possible accommodations before giving adverse employment consequences. Instead, Amplity predetermined that the moment Emily and Charlotte requested religious accommodations they would each lose their positions and be placed on unpaid leave.

3

These are adverse employment events under *Muldrow v. St. Louis,* 601 U.S. 346, 144 S. Ct. 967, 974 (2024). *See also Staton v. DeJoy* 1:23-cv-03223 2025 WL 42821 (D. Colo. 1/7/2025) (analyzing under the new *Muldrow* standard). It was a "predetermined illegal punishment for requesting a religious exemption." *McNeill v. Tyson Fresh Meats, Inc.,* 2023 WL 8532408 (N.D. Texas, December 8, 2023). Emily suggested several alternative accommodations – all of which were rejected. The denial of a requested religious accommodation, absent a showing of undue hardship, may itself constitute an adverse action.[1] Amplity will have no evidence to show it considered all possible accommodations in its procedure.[2]

**AMPLITY CANNOT MEET THE *GROFF* TEST BECAUSE IT DID NOT CONSIDER ALL POSSIBLE ACCOMMODATIONS, CONDUCTED NO ANALYSIS OF FACILITIES OR COST PROJECTIONS OF PROVIDING ANY POSSIBLE ACCOMMODATION**

The jury will not obtain the necessary facts for Amplity to sustain its undue hardship burden. The Court has assessed this case which now pivots on the crucial question of how an employer such as Amplity can factually demonstrate that a Covid

---

[1] *Cole v. Grp. Health Plan, Inc.,* 105 F.4th 1110, 1114 (8th Cir. 2024).

[2] An employer cannot merely assess the reasonableness of a particular possible accommodation suggested by the employee; instead, an employer must consider other options to resolve the employee's religious conflict. *Groff v. DeJoy*, 600 U.S. 447, 473 (2023). Bilateral cooperation involves an interactive process that requires participation by both the employer and the employee, including an open honest dialogue between the parties. *Thomas v. Nat'l Ass'n of Letter Carriers,* 225 F.3d 1149, 1155 (10th Cir. 2000); *Porter v. City of Chicago,* 700 F.3d 944, 953 (7th Cir. 2012) ("employers must engage in a dialogue with an employee seeking an accommodation.") (citing *Rodriguez v. City of Chi.,* 156 F.3d 771, 778 (7th Cir.1998) and *Philbrook*, 479 U.S. at 69)). *See also Mohamed v. 1st Class Staffing, LLC,* 286 F. Supp. 3d 884, 909 (S.D. Ohio 2017) (examples of not engaging in bilateral cooperation include failing to consult an employee about alternative religious accommodations or offering an accommodation in a take-it-or-leave it fashion).

19 virus safety risk presented any undue hardship to Amplity under the *Groff* analysis. Amplity believed, when it enacted its vaccine mandate, that tagging "safety risk" inevitably meant undue hardship which is incorrect. When the Court denied summary judgment to Amplity, Amplity saw its dilemma. Amplity filed its motion for reconsideration and urged the Court to hold that a safety risk alone was self-proving of undue hardship. But the Court rejected Amplity's view of the law ("safety risk and undue hardship are not coterminous"). Having labored under a wrong view of the law in its handling of the interactive process in assuming a safety risk disconnected from Amplity's overall business operations still could meet the undue hardship test, it made limited Rule 26 disclosures, its discovery responses provided no such linkage, as well as the Board member O'Loughlin repeatedly testified no such operational analysis was ever performed by the Board. Amplity's board in fact believed that a <u>safety risk was coterminous</u> of undue hardship and ended any further analysis. The Amplity board did not see any need to engage in any of the factors that would cross the threshold of undue hardship such as financial, or projections of loss of office efficiency, loss of business, or even the effect upon Amplity's overall business.

For the benefit of the Court this jury instruction for undue hardship is provided:

> \* An employer must reasonably accommodate an employee's religious beliefs unless the employer is unable to do so without constituting an undue hardship to the overall conduct of the employer's business.[3]
> \* Even if one accommodation poses an undue hardship to the employer, the employer must nevertheless consider all other possible accommodations.[4]

---

[3] 42 U.S.C. § 2000e(j).
[4] *Groff v. DeJoy,* 600 U.S. 447, 143 S. Ct. 2279, 2297 (2023).

5

> * Only after thorough consideration of all other options that pose an undue hardship may the employer deny an employee's request for accommodation.[5]
> * For purposes of this case, the phrase "undue hardship" can encompass factors such as the loss of office efficiency[6] or the safety risk an accommodation can pose to others;[7] the effect on the plaintiff's co-workers and resultant ramifications it has for the conduct of the employer's business; damage to the employer's ability to achieve its mission.[8]
> * In all of those scenarios the employer must still prove substantial increased costs in relation to the conduct of the defendant's particular business.[9] The substantial increased costs claimed by the employer must be excessive or unjustifiable.[10]
> * You should consider all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of the defendant.[11]

The Court made a Summary Judgment ruling. ECF 110. On page 20 of the Order captioned "Breach of Organon Contract and Business Relationship" the Court addressed Amplity's second theory of undue hardship. The Court also acknowledged another evidentiary issue in which Amplity sought to introduce financial information of its several pharmaceutical contract revenue and the revenue from Organon. *Id.* at p. 22. Plaintiffs had requested this information which Amplity refused to provide. *Id.* at p.23. The Court did not determine whether this testimony was admissible. The Court also issued an order denying Amplity's motion for reconsideration (ECF 115).

---

[5] *Groff* at 2297 (citing *Adeyeye*); *Adeyeye v. Heartland Sweeteners, LLC,* 721 F.3d 444, 455 (7th Cir. 2013) (employer "bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship"); *Hebrew v. Texas Dep't of Criminal Justice,* 80 F.4th 717 (5th Cir. 2023) (same).
[6] *Speer v. Ucor LLC,* No. 3:22-cv-426, 2023 U.S. Dist. LEXIS 198889, at *20 (E.D. Tenn. Nov. 6, 2023).
[7] *Id.* at *20.
[8] *Ryan v. Dep't of Just.,* 950 F.2d 458, 461–62 (7th Cir. 1991); *Baz v. Walters,* 782 F.2d 701, 706–07 (7th Cir. 1986); *Devore v. Univ. of Ky. Bd. of Trs.,* No. 5:22-cv-00186-GFVT-EBA, 2023 U.S. Dist. LEXIS 167239, at *11–12 (E.D. Ky. Sept. 18, 2023).
[9] *Groff v. DeJoy at* 470.
[10] *Id.* at 468-469.
[11] *Id.* at 470-71.

The ultimate question at summary judgment was not whether Plaintiffs remaining unvaccinated would be a safety risk. The question was whether that safety risk created an undue hardship on Amplity as a matter of law. It is at this point of the analysis that the issues of fact regarding interactions with others in terms frequency, proximity, and length of time matter." *Id.* at p.3.  The Court pointed out that Amplity had not provided any evidence of "how often" or "how many" coworkers the plaintiffs interacted with or "how long these interactions occurred." *Id.* at p.4.  Not only did Emily and Charlotte have zero co-worker contact, Amplity did not conduct any analysis of any facility Emily or Charlotte had as accounts or possible accounts in their respective territories.  Because Amplity did not designate any third party witnesses, did not produce evidence of any of its finances, conducted no financial cost analysis or projections, and did no analysis of any of their specific facilities or their credentialing requirements, this motion is directed at Amplity's inability to show any "safety risk" rose the level of an undue hardship in the context of its overall business.  *Speer v. UCOR LLC,* No. 3:22-cv-426, 2024 WL 4370773 (E.D. Tenn. Oct. 1, 2024) ("all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer").*Scafidi v. B. Braun Med., Inc.,* 2024 WL 184258 (M.D. Fla. Jan. 17, 2024) ("Braun has not presented any estimate of the costs it would have incurred if it had allowed Scafidi to retain her position without getting vaccinated. Furthermore, it does not appear that any of the hospital systems in Scafidi's territory had denied her access or denied her

7

Case 4:22-cv-00830-RK    Document 117    Filed 02/27/25    Page 7 of 15

requests for a religious exemption submitted through the hospitals' vendor credentialing systems at the time of her termination"). *Id.* at *11.

## IN LIMINE MATTERS

### <u>NO.1</u>

Plaintiffs move to prevent Dr. Salmon from giving opinions that purport to say what the Amplity policy was designed to accomplish or to justify Amplity's Covid vaccination policy on the basis it is not relevant nor helpful to the jury. *See Hayslett v. Tyson Foods, Inc.,* No. 1:22-CV-1123-STA-JAY, 2023 WL 11897503 (W.D. Tenn. Sept. 20, 2023) ("Defendants cite CDC guidance…" *but* "the undue burden test is not concerned with the wisdom of Defendants' vaccine mandate. The question is whether Defendants could offer an accommodation to Plaintiff without substantially increasing Defendants' costs"). In determining whether all possible accommodations would cause Amplity undue hardship, the jury will not be asked to determine Amplity's state of mind or reasoning behind its policy which is all that Dr. Salmon's report purports to be.

### <u>NO.2</u>

Plaintiffs move to prevent Dr. Salmon from giving opinions that it was reasonable or required for Amplity to rely upon the CDC guidance or that Amplity's Covid vaccination policy was a "reasonable response." These are his legal opinions and speculation about the state of mind of Amplity which is prohibited. *See Peterson v. City of Plymouth,* 60 F.3d 469, 475 (8th Cir.1995).

8

## NO. 3

Plaintiffs move to prevent Dr. Salmon from giving opinions about information that he thinks Amplity's policy was designed to accomplish citing information that Amplity asserts it had no knowledge of in its response to Request for Admissions. Dr. Salmon's report is replete with numerous positive assertions of knowledge such as "known or assumed benefits" of a Covid 19 vaccination. ECF 91-9. He makes many positive factual assertions, all of which are irrelevant because Amplity has disclaimed having any knowledge of that knowledge. Dr. Salmon's opinions would not be helpful to the jury in evaluating Amplity's state of mind or knowledge – if that were a relevant issue – and then would be confusing to the jury as it appears Dr. Salmon is imputing knowledge to Amplity and purpose to Amplity's policy which Amplity says it did not have in 2021 up through nearly the end of 2023.

## NO. 4

Plaintiffs move to prevent Defendant from introducing any evidence on subjects for which Amplity admitted or claimed ignorance or lack of knowledge in response to Request for Admissions. There were 32 statements which were all answered by Amplity claiming, as of October 20, 2023, lack of knowledge after inquiry. *See* attached responses to admissions.

These answers are not only admissions against interest but are more binding than those of a Rule 30(b)(6) designee's *I-don't-know* response. If Amplity's knowledge and purpose was and is going to be an issue for the jury, then those admissions could eliminate from trial what Amplity did and did not know as to what its vaccine mandate

9

was designed to accomplish. Having disclaimed knowledge as to whether the vaccines actually did anything by way of safety in preventing or hindering the spread of the virus to anyone, there was no need for plaintiffs to employ an expert to opine on a non-issue: *i.e.* whether vaccinating did anything to reduce the risk of spreading the virus. So similar to the 30)b)(6) witness who disclaims the corporation having knowledge, Amplity should be bound to its lack of knowledge assertions. *See CitiMortgage, Inc. v. Chicago Bancorp, Inc.,* 2013 WL 3946116, at *1 (E.D. Mo. July 31, 2013) (corporation is bound by the testimony of its designated witness). *See Function Media, L.L.C. v. Google, Inc.,* 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010)("When the 30(b)(6) representative claims ignorance of a subject during the deposition, courts have precluded the corporation from later introducing evidence on that subject"); *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.,* 2007 WL 4410370, at *8 (N.D. Tex. Dec. 14, 2007) (cannot disclaim corporate knowledge "and later introducing evidence on that subject"); *Ierardi v. Lorillard, Inc.,* 1991 WL 158911, at *3 (E.D.Pa. Aug.13, 1991) ("If the designee testifies that [the organization] does not know the answer to [deposing attorney]'s questions, [the organization] will not be allowed to effectively change its answer by introducing evidence during trial. The very purpose of discovery is to avoid trial by ambush"). Neither Amplity nor its expert should be permitted to backdate Amplity's vaccination policy with knowledge and purpose which Amplity specifically says it did not possess.

When Amplity presents its undue burden case in chief, it will certainly seek to tell the jury *why* it came up with its vaccination policy: it was purportedly "following

10

CDC guidance." But Amplity should not be allowed to then present testimony as to matters is said it didn't know – that following that guidance did any of the things Amplity said it didn't – and still doesn't – claim to know about what the vaccines actually could do. All of this implicates Amplity's state of mind. Not only should the jury have these admissions Amplity should not be allowed to proffer testimony, through its own witnesses or its expert, claiming knowledge or purpose on the very subjects Amplity disclaimed knowledge.

**AMPLITY SHOULD NOT ADDUCE EVIDENCE CONTRARY TO ITS RESPONSES TO REQUEST FOR ADMISSIONS**

Amplity witnesses should not be allowed to testify about anything Amplity stated it could not answer because of lack of knowledge. Put another way, if the jury is entitled to consider what Amplity had knowledge of, that same jury is also entitled to be told as to what Amplity judicially admitted it didn't know. So the jury can be told the Board relied upon CDC guidance but cannot be told by a witness or its expert that in doing so Amplity actually believed vaccinating would prevent or hinder the transmission of the virus. This is because Amplity responded to that question, as well as a host of other statements, saying it was ignorant. In addition to Admissions 1 and 12, in Admission 18 Amplity claimed ignorance to this statement: there "was no objective, scientific basis for Amplity to believe that being fully vaccinated protected against Covid-19 transmission when Ms. Welcome's employment was terminated." It is neither the Court nor plaintiffs' counsel's job to try to make sense of Amplity's lack of knowledge assertions. But they were responses that were measured and calculated by defense counsel. And with those responses there was therefore no reason for the

11

plaintiffs to hire an expert or go on any expedition of depositions about Amplity's knowledge or beliefs when it admitted, after conducting its own investigation, a complete vacancy of its corporate knowledge. Amplity must be bound to its *I-didn't/don't-know* judicial admission positions to each of the applicable admission statements. Thus any testimony the purports to contain a position or knowledge about each of the statements Amplity claims it didn't – and doesn't still know – should be prohibited. Amplity should be prohibited from offering any testimony on the subject matter of each one of the admissions which make that lack-of-knowledge response.

To be even more specific, Amplity's theory is that it was a safety risk for Emily and Charlotte to be unvaccinated when encountering healthcare workers and patients at facilities. Although Dr. Salmon's expert report does not stand for that scientific proposition – only that others (not named Amplity) *believed* at the time by the scientific community in 2021 – Amplity's safety theory still cannot be supported with testimony about what Amplity admitted it did not know.

Through its expert Amplity seeks to tell the jury that it was reasonable for Amplity to rely on guidance from the CDC (legal conclusion) and that Amplity's vaccine mandate was "a reasonable response to the then CDC guidance" (legal conclusion). Dr. Salmon will seek to tell the jury all kinds of things that Amplity has disavowed knowledge of: (ECF 91-9) (report) (the known or assumed benefits of the COVID-19 vaccination; was it known or assumed that a vaccinated person could not, or was less likely to, transmit the disease to others; what risks did they pose carrying out their duties unvaccinated as known or assumed at that time). None of those

12

opinions should be given to the jury as Amplity has admitted it knew none of those things.

## NO.5

Plaintiffs move to present to the jury the statements the defendant has admitted to but without the improper superfluous bare assertion statements by counsel after the admission. *See* responses 13, 20, 23, 27, 31, 36, 58, Rather than provide the allowed "admitted" response the defendant then adds argumentative bare assertions which are improper and of which the jury should not see.

## NO.6

Plaintiffs move to exclude the introduction of the defendant's admission responses that are denials or objections to the plaintiff's request for admissions. An admission has evidentiary value but a denial has none. In addition, several of the denials on the key issue of undue hardship was objected to by Amplity claiming the admission was "unduly burdensome" (No. 25) or denied but then adding the denial was because it needed to conduct discovery upon itself in order to answer (Nos. 28, 29, 30, and 32). In essence Amplity made additional four lack of knowledge responses guised as denials.

## NO.7

Plaintiffs move to exclude evidence of purported Organon statements or communications which Amplity has claimed required Amplity employees to be vaccinated or that Organon threatened Amplity with breach or loss of business..

13

In its Rule 26 disclosures, Amplity did not identify anyone associated with Organon – or for that matter any third party individuals. Amplity argued in summary judgment that it had to terminate Emily and Charlotte because Organon purportedly told Amplity it required covid 19 vaccinated employees from Amplity. All of this would be hearsay which asserts the truth of the matter asserted. *See Walker v. Wayne Cnty, Iowa,* 850 F.2d 433, 435 (8th Cir. 1988). Rule 26(a)(1)(A)(i) requires a party to disclose the name of any individual likely to have discoverable information. The Rule 26 submission did not disclose any representative or employee of any of Amplity's companies – including Organon. When a party fails to comply with Rule 26(a), the party may not use the witness to provide evidence "at trial" "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

## NO.8

Plaintiffs move to prevent Defendant from calling in-house counsel Eric Green as a trial witness. The Rule 26 disclosures of Amplity' identified counsel Green as having information regarding requests for exemptions and making determinations as part of his Review Board role. Amplity does not identify him as having information about "the expectations of Amplity's client" (hearsay) which Curt Gauen was the only one identified with that information. During the depositions of Karen McAndrews and Becky O'Loughlin, Mr. Green appeared, instructed a witness to "just say no," and when questions were asked of the witnesses as to communications with Green, privilege objections were made by counsel Goldblum. In the discovery responses, Amplity did not produce communications involving counsel Green and the other two

14

board members asserting attorney client privilege. Green's affidavit demonstrates Amplity' intention to have Green testify on a host of subjects that would involve his opinions. "Courts are forced to grapple with what must be disclosed" when in-house counsel alternately dons and doffs the privilege hat of a counsel and the non-privilege hat of the testifying witness. *Employees Committed For Justice v. Eastman Kodak Company,* 251 F.R.D. 101, 104 (W.D.N.Y. 2008). Then allowing a privilege to remain concerns of selective disclosure abound. Amplity should not be able to call in-house counsel as a witness because those communications were withheld, and he can selectively decide now what to testify to with impunity. This is patently unfair to the plaintiffs and invoke the sword and shield doctrine. *See United States v. Nobles,* 422 U.S. 225, 239 (1975) (no privilege if counsel were offered as a fact witness at trial by his client).

By:/s/Linus L. Baker  
Linus L. Baker MO 44980  
6732 West 185th Terrace  
Stilwell, Missouri 66085-8922  
913.486.3913  
913.232.8734 (fax)  
E-Mail: linusbaker@prodigy.net  
Attorney for the plaintiffs

## CERTIFICATE OF SERVICE

On this day of February 27, 2025, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.

/s/Linus L. Baker  
Linus L. Baker